SAVOY, Judge.
Plaintiff brought suit in tort for personal injury and property damage sustained in an amateur sports car race held at Austin, Texas, in August, 1963.
Plaintiff’s petition alleges that because of brake failure, he was unable to negotiate a curve in the race course, and that his 1957 Porche automobile left the roadway and struck a dirt embankment; that about a week prior to the race, the defendant had applied brake lining material to the front brake shoes of the automobile (the left front wheel only, as it later developed) ; that the linings separated from the shoes, causing the brake failure. Plaintiff further alleged defendant’s failure to properly bond the brake linings to the brake shoes; failure to properly test and gauge the heat of the oven used to bond the linings to the shoes; the use of excessive heat in bonding the linings to the shoes; and defendant’s failure to test the brake linings after application to the shoes in order to see that they were properly bonded or fused to the shoes.
The defendant answered, denying the material allegations of plaintiff’s petition, and subsequently filed a supplemental answer-alleging certain acts of contributory negligence and assumption of risk on plaintiff’s part, which need not be discussed here.
The case was tried on its merits, and the lower court held for defendant, dismissing plaintiff’s suit. From that judgment plaintiff has appealed, and defendant has an *194 swered the appeal, claiming that the appeal is frivolous and seeking damages of $350.-00 therefor.
Plaintiff contends that he has shown by expert testimony and a preponderance of the evidence that the brake linings were improperly bonded to the shoes by defendant, thus causing them to come unfused from the shoes, resulting in brake failure.
Defendant contends that the brake failure resulted from some other cause, and/or that plaintiff has not shown defendant’s negligence with any degree of certainty sufficient to hold defendant liable.
The following general background facts are revealed by the record. Plaintiff had previously purchased some brake lining material, and, on the occasion in question, he took the material and the two brake shoes from the left front wheel of the Porche automobile to defendant for the purpose of having the lining material bonded or fused to the shoes, which the defendant did. The defendant did not install the shoes in the wheel, that being done by plaintiff, who ordinarily did most of his own mechanical work. The race course on which the accident occurred was approximately one and one-half miles in length, and was laid out over the streets in the City of Austin. At the time of the accident, plaintiff had made seven or eight laps over the course, attaining a maximum speed of about 110 miles per hour on the straightaways. Each lap over the course required braking some six times, approximately, so as to negotiate turns and corners, according to plaintiff’s testimony. Plaintiff stated that the accident occurred as he was rounding a curve, that he attempted to apply his brakes, but that, when he did, there were no brakes at all. The brakes were tested before the race,, and had worked during the race up to the time of the accident.
Plaintiff offered in evidence one of the brake shoes and both of the brake linings from the left front wheel of the automobile. One of the linings was completely intact; the other was intact except for one piece about two inches long and one-half inch wide, which had been broken off. The shoe had no lining on it, and plaintiff’s purpose was, of course, to show the separation or debonding of the linings from the shoes. Why plaintiff offered only one of the two brake shoes is not clear from the record.
The crux of plaintiff’s case rests on the expert testimony of Mr. Louis F. Margot. From visual observation, he felt that the linings had been improperly bonded to the shoes, and gave three possible causes; there had been too much adhesive applied; there had been insufficient drying time between the application of the adhesive and the actual bonding of the lining; or there had been insufficient clamp pressure, the pressure having been relieved too soon. On cross-examination, when asked what things can cause bond failure, he replied:
"As I stated a few minutes ago, there’s several factors involved in there: Not enough temperature; too much temperature; not enough glue or bonding agent; too much bonding agent. We found in some cases the shoe being too smooth; air bubbles that will develop in there by having too much glue; not enough clamp pressure on there, which will also cause bubbles to come in there, which will be insufficient pressure against the — of the lining against the shoe; not enough drying time for your agent to dry; taking your clamps off too fast after they come out of the oven — .”
While he agreed that brake shoes are normally delined by heating them to about 750 degrees (that is, purposely delined, as when applying new linings), he did not feel that application of the brakes for sustained periods at high speeds, such as plaintiff admittedly had to do in the race, would generate sufficient heat to have caused debond-ing. Or, at least that while there might well be enough heat as a matter of degrees, it would be partially dissipated into other parts *195 of the wheel, and there would not he enough heat applied directly to the linings to cause debonding. He stated further, on cross-examination, that if brake fluid leaked into the inside parts of a wheel, it would destroy the braking action by eliminating the required friction.
One of plaintiff’s employees, Robert Cornell, testified that after the automobile had been brought back to Lafayette, Louisiana, following the accident, there seemed to be brake fluid present on some of the parts of the left wheel, and that it smelled of brake fluid.
Carroll Castille, one of defendant’s employees, testified that when a brake shoe is heated for the purpose of removing the lining, the shoe can then simply be dropped onto a concrete floor or the like and the lining will fall off in one complete, or almost complete, piece, the heating action having debonded the lining from the shoe.
Mr. Harold Delhomner testified as an expert witness for defendant. He felt that as a general rule it was never wise to reline only one wheel at a time for the reason that you might then have a difference in friction, wheel to wheel, which could cause erratic pulling. He also felt that it is possible to generate enough heat by the application of the brakes of an automobile under extreme circumstances to cause a debonding of the linings from the shoes. He felt, as did plaintiff’s expert, Mr. Margot, that if brake fluid were to leak into the inside parts of a wheel, the required friction would be minimized, thus causing a malfunction. He did not feel that physical examination of the brake shoes and linings after debonding would be a sufficiently accurate test of whether or not the adhesive material used had been properly applied for the reason that the adhesive material would have been dissipated in the debonding process. It was his further opinion that if the brake lining had gone bad in one wheel of the automobile there would still have been brakes in the other wheels of the automobile, and that the plaintiff would not have experienced the complete lack of brakes that he had described.
It should be noted that plaintiff’s automobile was, for all practical purposes, demolished in the accident. It suffered very heavy front end damage and the only salvageable portion of it was the engine. For that reason, it is quite possible that clear evidence of the initial or triggering cause of plaintiff’s brake failure was obliterated by the physical damage sustained. There is some evidence, for example, of brake fluid leakage, but the question would be whether the leakage occurred before or after the collision with the embankment. An equally thought-provoking question is the one posed by Mr. Delhomner to the effect that plaintiff’s complete lack of any brakes at all is not, in his opinion, consistent with brake lining failure in only one wheel.
We have carefully considered all of the evidence as a whole. Any decision will necessarily rest primarily upon the testimony of the two expert witnesses. Both of these gentlemen have had many years experience in the field of automobile braking systems, and their testimony is in conflict. The facts of the case leave no doubt that plaintiff’s automobile was being put to its maximum capacity under extremely trying conditions, thus not ruling out a rather fair possibility of some sudden breakage or failure which is the fault of no man. For the several reasons enumerated and questions raised herein, we find no manifest error in the lower court’s finding that there is not a preponderance of evidence in favor of plaintiff. To reverse the lower court would, in our opinion, require assumptions not borne out by the evidence.
With regard to defendant’s answer to this appeal in which it seeks damages for a frivolous appeal, we do not feel it necessary to discuss the matter in great detail. Suffice it to say that the issues between the parties are genuine enough to negate defendant’s claim for damages, and consequently it is rejected.
*196 Accordingly, the judgment of the lower court is affirmed, all costs of this appeal being assessed against plaintiff-appellant.
Affirmed.